**BRIAN S., et al., Plaintiffs,**

v.

**Paul L. VANCE, et al., Defendants.**

**No. Civ. PJM 99–15.**

United States District Court,
D. Maryland.

March 15, 2000.

Bogin and Eig, Washington, DC, for plaintiffs.

Edmund W. Law, New Market, MD, Zvi Greismann, Rockville, MD, for defendants.

## OPINION

MESSITTE, District Judge.

### I.

This case raises the important issue, not yet resolved in the Fourth Circuit, of which party in an action brought under the Individuals with Disabilities Education Act (IDEA) bears the burden of proof at the administrative due process hearing.[1] The circuits that have addressed the issue are divided, some placing the burden upon the school district, others upon the party seeking to challenge the IEP, which ordinarily means the parents. In only a few cases have courts attempted to articulate a rationale for allocating the burden of proof at this level.

In the Court's view, the better part of reason leads to the conclusion that at least where an *initial* IEP is brought to a due process hearing, the burden of proof lies with the school district, which in this case occasions a remand to the ALJ. In contrast, where a party—either the parents or the school district—seeks to change an existing IEP, the burden at the due pro-

cess hearing fairly lies with the party seeking the change. Further, as the law of this Circuit incontrovertibly establishes, once an administrative decision has been made regarding the IEP, the burden of overturning it lies with the party challenging the administrative decision. *See Tice v. Botetourt County Sch. Bd.*, 908 F.2d 1200, 1206 n. 5 (4th Cir.1990).

### II.

Jocelyn and Martin S. seek reimbursement of the costs incurred by them for enrolling their son Brian in a private school for disabled children. They contend that the Montgomery County Public Schools system (MCPS)[2] failed to provide Brian with a free appropriate education as required under the IDEA, 20 U.S.C. § 1400 *et seq.*

There is no question that Brian is a child who is learning disabled, language-impaired and other health impaired. He has been diagnosed as having attention deficit hyperactivity disorder and needs special education and related services to benefit from school attendance. From kindergarten through seventh grade, Brian attended Green Acres School, a private school in Montgomery County where, despite small class size and significant accommodations

---

1. The Fourth Circuit had the issue before it in *Stemple v. Board of Educ. of Prince George's County*, 623 F.2d 893, 896 (4th Cir.1980), but declined to decide it. At least two decisions from the District of Maryland have touched upon it. In *Fritschle v. Andes*, 45 F.Supp.2d 500 (D.Md.1999), Judge Davis, without more, simply noted the split in authorities on the issue. *Id.* at 508 n. 21. In *Schmerling v. Anne Arundel County Board of Educ.*, Civil Action No. WMN 98–2283, slip op. at 5 (D.Md. May 18, 1999), Judge Nickerson addressed the issue squarely, declining to establish a "hard-and-fast rule for all IDEA cases." On the facts, however, he affirmed the Administrative Law Judge (ALJ) who had placed the burden of proof on the parents to establish that an initial individualized education program (IEP) was inappropriate. Judge Nickerson reasoned that certain presumptions apply in IDEA cases, including a presumption of

correctness of the IEP. *Id.*, slip op. at 5–6 (citing *Johnson v. Independent Sch. Dist. No. 4*, 921 F.2d 1022, 1026 (10th Cir.1990)). He also cited a presumption in favor of "mainstreaming" which the IEP had proposed for the child in that case. *Id.*, slip op. at 6. Judge Nickerson pointed out that plaintiffs themselves had "participated in the proceedings as though they had the burden" and had gone through the proceeding without objection. *Id.*, slip op. at 10. The Court respectfully disagrees with Judge Nickerson that a "hard-and-fast" rule should not be laid down in these cases or, as the Court will now undertake to explain, that the burden is upon the parents when they disagree with an initial IEP.

2. Defendant Paul Vance was at all relevant times Superintendent of the MCPS system.

as well as parentally provided extra services, he did not succeed.

In November 1997, Brian's mother contacted the Montgomery County school authorities and requested special education services for the 1998–99 school year, submitting outside evaluations of Brian. After reviewing the outside evaluations and conducting additional tests, MCPS found Brian eligible for special education and proposed a part-time placement for him at Hoover Middle School, with an alternative placement at the Robert Frost Middle School. This was Brian's initial IEP.

Because his parents believed the IEP drafted for Brian was not reasonably calculated to provide him with appropriate educational benefit, they notified administrative authorities that they rejected the proposed placement. In May of 1998, they requested an administrative due process hearing, citing the school system's purported failure to provide Brian with a free appropriate public education. More or less simultaneously, anticipating the beginning of a new school year in the fall, Brian's parents enrolled him for the 1998–99 school year at the McLean School, a private school for learning and language disabled students located in Montgomery County.

Over three days in June and July 1998, a due process hearing was convened before an ALJ who concluded shortly after that the school authorities had offered Brian a free appropriate education. Accordingly, Brian's parents' claims for reimbursement of the tuition and costs of Brian's placement at the McLean School for the 1998–99 school year were denied.

The ALJ was particularly concerned about which party bore the burden of proof and, at the end of the first day of the hearing, asked counsel to submit brief memoranda of law on the issue. In his subsequent written decision, he stressed how important the allocation of the burden was to the outcome of the case:

There are experts on both sides in this case who have testified with opposing points of view. The credentials of all of those experts, in their respective fields, were impressive. Because each side's experts have diverging views on the question of what the Child's needs were and which placement would afford the requisite educational benefit for the Child, *an assignment of the burden of proof in this case becomes critical.*

Decision at 29 (emphasis supplied).

Acknowledging that "[t]he case law provides support for assigning that burden to either party," he opted for the rationale expressed by the U.S. Court of Appeals for the Fifth Circuit in *Alamo Heights Independent School District v. State Board of Education,* 790 F.2d 1153, 1158 (5th Cir. 1986) (quoting *Tatro v. Texas,* 703 F.2d 823 (5th Cir.1983), *aff'd,* 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984)):

> [The IDEA] "place[s] primary responsibility for formulating handicapped children's education in the hands of state and local school agencies in cooperation with each child's parent." In deference to this statutory scheme and the reliance it places on the expertise of local education authorities, ... [The IDEA] creates a "presumption in favor of the educational placement established by a [student's IEP]," and "the party attacking its terms should bear the burden of showing why the educational setting established by the [IEP] is not appropriate."

*See* Decision at 30.

Given the reluctance of the Fourth Circuit, as stated in *Tice,* 908 F.2d at 1207, "to second-guess the judgment of education professionals," the ALJ held that:

> In the matter *sub judice,* the Parents bear the burden of persuasion in establishing that the IEP prepared for the Child by MCPS and/or the placement(s) offered for the Child for the 1998–1999

school year fail to afford the Child an opportunity for a FAPE.

Decision at 31.[3]

The ALJ then proceeded to discuss various aspects of the record in favor of and against the proposed IEP. He cited the testimony of Drs. Ruth D. Spodak and Carol A. Kamara, Brian's experts on learning disabilities and speech/language pathology respectively. Both stated that the IEP failed to offer an appropriate educational benefit, since in their view Brian requires small, self-contained special education classes of a kind not included in the IEP. Dr. Spodak testified that such classes were essential to Brian's education because they would tend to minimize the distractions interfering with Brian's ability to learn. Dr. Kamara testified that Brian suffers from a "central auditory processing" problem that increases his susceptibility to distractions, necessitating a small, self-contained learning environment.

On the other hand, the ALJ noted that Dr. Spodak's testimony differed in some respects from an earlier report she and members of her staff had written about Brian's learning disabilities. This, along with the fact that she herself had spent only ten minutes with Brian, caused the ALJ to "question[ ] the probative value of Dr. Spodak's opinion." Decision at 36. Similarly, the ALJ noted that Dr. Kamara's opinion was compromised to some extent by her acknowledgment of the diagnostic limitations of the test she relied upon in diagnosing Brian's "central auditory processing" problem and by her refusal

to offer an opinion as to whether Brian's speech-language disability is mild, moderate, or severe. Finally, the ALJ noted that two experts from MCPS, Dr. Barbara J. Butera and Pamela Zahra, a speech pathologist, testified that the IEP was appropriate to Brian's needs and that, in their view, he suffers not from a "central auditory processing" problem but from a mild speech-language disability.

Ultimately, the ALJ concluded that the parents had not carried their burden of proof:

> The Parents have failed to persuade the ALJ that the April 6, 1998 IEP was not reasonably calculated to provide educational benefit, or that the placement(s) offered by MCPS are not appropriate to provide for the Child's educational needs in accordance with the IDEA.

Decision at 42.

Before the Court, Brian's parents argue, among other things, that the ALJ erred in assigning the burden of proof to them. The parties have filed Cross–Motions for Summary Judgment on this and other points.[4]

## III.

Deferring case citations for a moment, it may be useful to begin by considering the different settings in which a challenge to an IEP may arise:

1) there is the initial IEP, proposed by the school authorities the first time it is sought for a child, with which the parents

---

**3.** In a footnote to this statement, the ALJ cited an additional reason for assigning the burden of proof to Brian's parents. He found that they were apparently committed to sending Brian to McLean School regardless of what the IEP might show, terming their appearance at the ARD meeting "a mock effort." Decision at 32 n. 6. Assuming the parents were irrevocably committed to McLean, that might undercut any claim by them that the school authorities failed to develop a plan, *see, e.g., Sanger v. Montgomery County Bd. of Educ.*, 916 F.Supp. 518, 525 n. 7 (D.Md. 1996). But there is no reason why the parents' decision should occasion a shift in the

burden of proof. Parents may unilaterally change their child's placement during the pendency of review proceedings, without the consent of school officials, and may receive reimbursement if it is later determined that the proposed placement violated the IDEA. Parents act at their own risk, however, if it is eventually determined that the IDEA was not violated. *Id.* at 527.

**4.** Because the burden of proof issue is dispositive, the Court does not address the other issues raised by the parties in their Motions.

do not agree and as to which they seek an administrative due process hearing;

2) there is the existing IEP, at one time agreed to by everyone, which either the parents or the school district seek to change against the wishes of the other, whereupon the matter goes to an administrative due process hearing; and

3) there is the IEP that has been passed upon by an independent ALJ, which a party seeks to challenge in a court proceeding.[5]

The cases do not ordinarily make these distinctions, but in fact there appears to be reason to do so.

In the last scenario, the law and policy considerations are the most sharply defined. As indicated, in the Fourth Circuit the burden of proof on appeal from an administrative decision is upon the party challenging the decision. *See Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146, 152 (4th Cir.1991); *Tice*, 908 F.2d at 1206 n. 5; *Spielberg v. Henrico County Public Schools*, 853 F.2d 256, 258 n. 2 (4th Cir. 1988). This, according to the Fourth Circuit, arises out of deference to the underlying state administrative process. *Tice*, 908 F.2d at 1206 n. 5. This undoubtedly flows from the general belief that, once an impartial judicial hearing has been held and a decision made—even at the administrative level—the burden of overturning the decision ought to be upon the party challenging it.[6]

Moving back to the next scenario, where an existing IEP is sought to be changed, if

for no other reason than that it seems "fair[ ]," *Tatro v. State of Texas*, 703 F.2d 823, 830 (5th Cir.1983), it is not unreasonable to conclude that the burden of persuasion as to the change should be borne by the party seeking the change. Numerous cases so hold. *See, e.g., Salley v. St. Tammany Parish Sch. Bd.*, 57 F.3d 458, 467 (5th Cir.1995); *Doe v. Board of Educ. of Tullahoma City Schools*, 9 F.3d 455, 458 (6th Cir.1993); *Johnson v. Independent Sch. Dist. No. 4 of Bixby, Tulsa County, Oklahoma*, 921 F.2d 1022, 1026 (10th Cir. 1990); *Alamo Heights*, 790 F.2d at 1158; *Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 919 (1st Cir.1983); *Tatro*, 703 F.2d at 830.[7]

These authorities are in accord with the observation made by Professor Wigmore that the burden of proof is frequently placed "upon the party to whose case the fact is essential," 9 Wigmore on Evidence, § 2486 at 288 (italics omitted). In the context of an IDEA case, this argues for the proposition that the party seeking a change in the IEP should have to explain why the change is appropriate.

Despite this, a number of cases hold that the burden of proof at the administrative level should always lie with the school district, even when the parents are seeking to change an existing IEP. *See Clyde K. v. Puyallup Sch. Dist., No. 3*, 35 F.3d 1396, 1398 (9th Cir.1994); *see also Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir.1998); *E.S. v. Independent Sch. Dist., No. 196*, 135 F.3d 566, 569 (8th Cir.1998); *Carlisle Area Sch. v. Scott P.*,

---

**5.** There is at least one further scenario, in which both the parents and the school district seek to change an existing plan. Discussion of which party has the burden of proof in that setting is best left for another day.

**6.** But not all circuits agree that assignment of the burden should be thus. In *Carlisle Area School v. Scott P.*, 62 F.3d 520, 533 (3d Cir. 1995), for instance, the Third Circuit held that the burden should always be upon the school district. *See also Oberti v. Board of Educ.*, 995 F.2d 1204, 1219 (3d Cir.1993).

**7.** It is not always clear from the language of these cases whether they are addressing the burden of proof at the administrative level, in the district court, or both. The cases are often characterized, however, as standing for the proposition that the party seeking to change an existing IEP bears the burden of proof at the administrative level. *See, e.g., T.H. v. Board of Educ. of Palatine Community Consolidated Sch. Dist. 15*, 55 F.Supp.2d 830, 835 n. 5 (N.D.Ill.1999); *Schmerling*, slip op. at 5; *Manchester Sch. Dist. v. Charles M.F.*, No. CIV. 92–609–M, 1994 WL 485754, at *4 (D.N.H. Aug.31, 1994).

62 F.3d 520, 533 (3d Cir.1995); *Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1034–35 (3d Cir.1993); *Lascari v. Board of Educ. of Ramapo Indian Hills Regional High Sch. Dist.*, 116 N.J. 30, 44, 560 A.2d 1180, 1188 (1989).

The reasoning of these holdings varies from none at all, *i.e.* from mere assertion, to a brief reference to the statutory obligation to accommodate disabled children, to, in very few cases, a rather elaborate explanation. Among the cases that merely assert that the burden is on the school district are *Clyde K*, 35 F.3d at 1398, and *Walczak*, 142 F.3d at 122. In the middle category is *Wall v. Mattituck–Cutchogue School District*, 945 F.Supp. 501 (E.D.N.Y. 1996), to wit:

> It has consistently been held that the burden throughout the administrative process is placed upon the school district.... This is in obvious recognition of the school's overarching obligation to attend to the specific educational needs of children with disabilities. *See* S.Rep. No. 94–168 to P.L. 94–142, at 9, *reprinted in* 1975 U.S.C.C.A.N. 1425, 1433 ("It is this Committee's belief that the Congress must take a more active role under its responsibility for equal protection of the laws to guarantee that handicapped children are provided equal educational opportunity").

945 F.Supp. at 511 (citations omitted).

Undoubtedly the most elaborate rationale is set forth in *Lascari*, which bears quoting *in extenso*:

> [W]e believe it is more consistent with the State and federal scheme to place the burden on the school district not only when it seeks to change the IEP, but also when the parents seek the change.
>
> Various considerations lead us to that conclusion. Underlying the State and federal regulations is an abiding concern for the welfare of handicapped children and their parents. Consistent with that concern, the basic obligation to provide a handicapped child with a free, appropriate education is placed on the local school district. It is the district that must identify handicapped children and then formulate and implement their IEPs. Finally, the regulatory scheme vests handicapped children and their parents with numerous procedural safeguards. Those safeguards include the right to counsel and to the advice of experts, 20 U.S.C. § 1415(d)(1); 34 C.F.R. § 300.508(a)(1); to present evidence and cross-examine witnesses, 20 U.S.C. § 1415(d)(2); 34 C.F.R. § 300.508(a)(2); to "have the child who is the subject of the hearing present," *id.* at § 300.508(b)(1); and to a public hearing, *id.* at § 300.508(b)(2). Like those procedural safeguards, the allocation of the burden of proof protects the rights of handicapped children to an appropriate education.

Our result is also consistent with the proposition that the burdens of persuasion and of production should be placed on the party better able to meet those burdens. In the past, we have placed either the burden of production, see *Ryan v. Mayor & Council of Borough of Demarest*, 64 N.J. 593, 604–05, 319 A.2d 442 (1974), or the burden of proof on the party with the better access to relevant information, *Andersen v. Exxon Co.*, 89 N.J. 483, 500, 446 A.2d 486 (1982); *Brundage v. New Jersey Zinc Co.*, 48 N.J. 450, 475–77, 226 A.2d 585 (1967). The school board, with its recourse to the child-study team and other experts, has ready access to the expertise needed to formulate an IEP. Through the child study team, the board generally has extensive records pertaining to a handicapped child. The board is also conversant with the federal and State laws dictating what the district must provide to handicapped children in order to comply with the EAHCA. *Cf. S–1 v. Turlington*, 635 F.2d 342, 348–49 (5th Cir.) (burden on district to raise question whether student's misconduct is based on handicap because parents lack where-

withal to know rights under EAHCA), *cert. denied,* 454 U.S. 1030, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981), *abrogated on other grounds by Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). By contrast, parents may lack the expertise needed to formulate an appropriate education for their child.

116 N.J. at 44–45, 560 A.2d at 1188.[8]

As to the first scenario—that in which an *initial* IEP is disputed at a due process hearing—all of *Lascari's* considerations came into play but there is more. In the initial situation, unlike the change situation, the parents have never agreed that the IEP is appropriate. By definition, they have disagreed and sought a determination by an impartial hearing officer, one, it may be noted, who by law may not be associated with the school authority. 20 U.S.C. § 1415(f)(3). In this circumstance, the only sense in which "change" is involved is that the parents wish to change what the school authorities have unilaterally proposed. Since the IEP is supposed to be a joint enterprise, it is debatable whether an IEP can even be said to exist if a parent has never agreed to it. The situation seems much like that in which two parties are engaged in a dispute before litigation has occurred, following which litigation is initiated. If one assumes, again along with Wigmore, that "the party having in form the affirmative allegation" should carry the burden, see Wigmore, § 2486 at 288 (italics omitted), it would seem entirely reasonable to assign the burden to the school authority to affirmatively

establish the propriety of its plan.[9] As one commentator has pointed out, this in no way reflects a lack of deference to the expertise of the school authorities. But there may be, she writes, a tendency to "confuse the *Rowley* Court's deference to school officials on methodological matters with matters of burden of proof." Dixie Snow Huefner, "Judicial Review of the Special Educational Program Requirements Under the Education for All Handicapped Children Act: Where Have We Been and Where Should We Be Going?" 14 *Harv.J.L. & Pub. Pol'y* 483, 512 (1991). To acknowledge the expertise of school officials is not the same as saying that they should not have to demonstrate to an impartial fact-finder, at least in the first instance, that the proposed goals and objectives of the IEP address the student's needs, or that the IEP delivers services to those needs in a way that will provide progress towards those goals and objectives, or that the proposed criteria to evaluate the child's progress are in place and can actually measure the extent to which the objectives are obtained. *Id.*

Wigmore summarizes the burden of persuasion issue thus:

> There is … no one principle, or set of harmonious principles, which afford a sure and universal test for the solution of a given class of cases. The logic of the situation does not demand such a test; it would be useless to attempt to discover or to invent one; and the state of the law does not justify us in saying that it has accepted any. There are

---

**8.** This Court would add a further observation: The Congressional statements and declarations that appear at the beginning of the IDEA refer to minority children, *e.g.* 20 U.S.C. § 1400(b)(7) to (10), in particular economically disadvantaged minorities. *Id.* at § 1400(b)(8)(C). Strictly speaking, if parents such as these have the burden of persuasion at the administrative level, their failure to put on a *prima facie* case would mean that the school district could rest without having to produce any evidence in justification of the IEP. On the other hand, parents who could afford to retain counsel and experts, while still having the burden of persuasion, could at

least force the school district to produce evidence in support of the IEP. *Query,* whether such a result is fair, apart from whether Congress could have intended it.

**9.** Of course the same argument could be made in support of assigning the burden to the school board at any level—that it should always be required to demonstrate the affirmative of the plan that it proposes. That, in fact, appears to be the rationale of those cases that have assigned the burden to the school board at all levels.

merely specific rules for specific classes of cases, resting for their ultimate basis upon broad reasons of experience and fairness.

Wigmore, § 2487 at 292 (footnotes omitted).[10]

To the extent that the Court writes on a clean slate, it holds that with regard to an initial IEP, experience and fairness dictate that the school district should have the burden of proof at any administrative due process hearing that might follow. While the issue is not squarely presented by this case, in order to avoid any confusion in the matter, it seems opportune to posit as equally reasonable that, when a change is sought in an existing IEP, the party seeking the change should have the burden of proof.

## IV.

 Applying these considerations to the facts of the present case, the Court concludes that the ALJ erred in his allocation of the burden of proof. Because he himself saw the allocation issue as "critical" to the outcome, eventually holding that the parents had failed to sustain their burden, the Court is unable to say how the ALJs' decision might differ if the burden of proof were properly assigned. The Court declines, at this stage at least, to substitute its own weighing of the evidence for that of the ALJ.

Under the circumstances, the Court deems it appropriate to remand the case to the ALJ for proceedings consistent with this Opinion.

A separate Order will issue implementing this decision.

### ORDER

Accordingly, for the foregoing reasons, it is this 15th day of March, 2000

ORDERED:

1) Plaintiff's Motion for Summary Judgment is GRANTED;

2) Defendant's Motion for Summary Judgment is MOOT;

3) This case is REMANDED to the Administrative Law Judge for proceedings consistent with this Opinion; and

4) The Clerk of Court shall CLOSE this case.

---

10. *Accord* Edmund M. Morgan, *Basic Problems of Evidence* 28 (4th ed.1963):

The truth seems to be, and many of the modern decisions expressly state, that the allocation of the burden is to be determined by considerations of fairness, convenience and policy. Such considerations require the exercise of a sound judgment and prior judicial experience, as revealed in past decisions, has strong persuasive effect.