Cassie STEINBERG, et al., Plaintiffs,

v.

Jerry D. WEAST, et al., Defendants.

No. Civ.A. L–00–2397.

United States District Court,
D. Maryland.

Feb. 9, 2001.

Michael J. Eig, Haylie M. Iseman of Michael J. Eig and Associates, P.C., Washington, DC, for Plaintiffs.

Jeffrey A. Krew of the Law Office of Jeffrey A. Krew, Columbia, MD, for Defendants.

## MEMORANDUM

GRIMM, United States Magistrate Judge.

This case has been assigned to me for all proceedings, with the consent of the parties. 28 U.S.C. § 636(c); Local Rule 301.4. The parents of Cassie Steinberg, a minor, have brought suit challenging the ruling of an administrative law judge ("ALJ") upholding the decision of the Montgomery County Public Schools ("MCPS") that Cassie attend school during the 1999–2000 school year at the Rock Terrace School, a public school for students with multiple disabilities. The parents also appeal from the ALJ's decision denying their request for tuition reimbursement associated with their decision to send Cassie to the Riverview School, an out of state residential school, during the 1999–2000 school year. Cassie's parents have brought claims under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 794, and 42 .U.S.C. § 1983. The MCPS and Cassie's parents have filed cross motions for summary judgement, which are fully briefed. (Papers Nos. 9, 13, 14, 15.) No hearing is necessary, Local Rule 105.6. For the reasons stated below, the MCPS' motion is GRANTED, and the Parents' is DENIED.

## BACKGROUND

Cassie is a sixteen year old girl with significant learning disabilities[1]. For eight years during her elementary and middle school education, Cassie attended the Lab School, a private school for students with leaning disabilities. MCPS paid the cost of this education. Although she made significant progress at the Lab School, and her parents were satisfied with her education there, they were advised at the end of Cassie's eighth grade school year that the Lab School would not be an appropriate place for her to attend high school. The Lab School's high school program is directed towards the award of a diploma, and Cassie's teachers felt that it would be difficult for her to meet the MCPS requirements for a diploma at the Lab School.

In May, 1999, an Individual Education Plan ("IEP") meeting was held by MCPS, and attended by Cassie's parents, representatives of MCPS and the Lab School, to discuss Cassie's placement for the 1999–2000 school year. The meeting was suspended without finalizing an IEP for Cassie, or recommending a placement for her, in order to obtain the results of updated psychological testing. However the record of the May, 1999 IEP meeting reflects that in part II, "Additional Information" the box corresponding to a Fundamental Life Skills ("FLS") program of study was checked, and the box corresponding to General Education ("GE") was not.

The IEP meeting re-convened in July, 1999, after the psychological tests were completed. Cassie's parents, with their attorney, attended, as did representatives of the MCPS and Lab School. During the meeting an IEP was proposed for Cassie for the 1999–2000 school year. While Cassie's parents approved of the goals and objectives listed in the IEP, which had been developed by the Lab School, they disapproved of the placement recommendation of the IEP team, which was Rock Terrace, a level V intensity, public, nonresidential school located in Montgomery County, Maryland. Instead, Cassie's par-

---

1. Cassie has a full scale I.Q. of 75, which is borderline. She is an auditory learner, but suffers from an auditory processing problem, that may be neurological in origin. Additionally, she suffers from anxiety, has difficulty with self-advocacy, and has a hard time finding her way in unfamiliar environments. (TR 33–35, 37–38, 78, 163–165, 282.) Despite her disabilities, she was acknowledged by all to be a "delightful child" who liked school and tried her very best. (TR 163–165, 383.)

ents urged that she be placed at the Riverview School, a private, level VI intensity, residential school located in Cape Cod, Massachusetts, and that the $48,000 tuition for school year 1999-2000 be paid by MCPS.

The record for the July 1999 IEP meeting reflects that in part II, Additional Information, both the GE and FLS boxes were checked regarding the recommended program of studies. However, the placement recommended, Rock Terrace School, only would be able to provide Cassie with a FLS curriculum, and if she was to receive any GE classes, they would have to be provided at another school.

The record prepared for the July IEP meeting, introduced into evidence at the administrative hearing as Parents' Exhibit 5, reflects considerable discussion regarding whether Cassie would be able to complete the requirements for a GE course of study, needed to obtain a diploma, as opposed to taking a FLS course of study, which would result only in a certificate of completion. In addition, the record of the comments of the MCPS representatives expressed their skepticism regarding the recommendation by the Lab School representatives and Cassie's parents, that Cassie be placed in a 24 hour a day residential school. (Parents Exhibit 5, handwritten notes at 11, 14, 17-18, 21-22.)

Cassie's parents rejected the MCPS' placement recommendation for Cassie for the 1999-2000 school year, and enrolled her in the Riverview School. Thereafter, a due process hearing was held before Administrative Law Judge Paul Handy on December 3 and 14, 1999. During the hearing, Cassie's parents called two witnesses[2], and introduced various exhibits. The MCPS called three witnesses[3], and

introduced exhibits. On February 11, 2000 Judge Handy issued a 25 page written decision, upholding the MCPS' decision to place Cassie at Rock Terrace School for the 1999-2000 school year, and denying the parents' request for tuition reimbursement. Judge Handy found that Cassie's parents had not alleged any procedural violations of the IDEA or its implementing federal and state regulations. (ALJ Decision, Paper No. 7 at 15.) With respect to the substantive issues, he found that the MCPS' placement decision for Cassie for the 1999-2000 school year did afford her with a Free and Appropriate Public Education ("FAPE"), as required by the IDEA and, accordingly, that the parents were not entitled to tuition reimbursement. *Id.* at 24-25. This lawsuit followed. 20 U.S.C. § 1415. The parties have filed with the court a copy of the transcript of the administrative hearing, as well as the exhibits introduced[4].

## DISCUSSION

The standards of summary judgment outlined by FED.R.CIV.P. 56, and the familiar cases interpreting that rule apply to IDEA cases. *See, e.g., Jones v. Washington County Board of Educ.,* 15 F.Supp.2d 783, 785 (D.Md.1998). "Summary judgment is the most pragmatic procedural mechanism for resolving IDEA cases." *King v. Board of Educ. of Allegany County,* 999 F.Supp. 750, 764 (D.Md.1998) (citing *Wall v. Mattituck-Cutchogue School Dist.,* 945 F.Supp. 501, 507-08 (E.D.N.Y. 1996)).

In reviewing administrative decisions in IDEA cases a district court is "required to make an independent decision based on a preponderance of the evidence, giving due weight to the state proceed-

---

**2.** Cassie's mother, Dr. Deborah Peikes, and Ms. Sally Seaquist, the Lab School's coordinator of junior high school programs, testified for the parents.

**3.** Dr. Suzanne Spicher, Cassie's case manager at MCPS, Ms. Judith Amick, a MCPS psychologist, and Ms. Jennifer Hay, a counselor at

the Rock Terrace School, testified for the MCPS.

**4.** References to the transcript will be cited as "(TR at ____)", and exhibits will be referred to by the exhibit number given at the hearing.

ings." *King*, 999 F.Supp. at 766 (citing *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 103 (4th Cir.1991)); *see also, Jones*, 15 F.Supp.2d at 785. "In so doing, the district court makes a bounded independent decision based on the administrative record," and if it determines that the hearing officer made his or her fact findings in a "regular manner and with evidentiary support, they are entitled to presumptive validity, and are to be considered *prima facie* correct." *King*, 999 F.Supp. at 766 (citing *Doyle*, 953 F.2d at 103, 105); *Jones*, 15 F.Supp.2d at 785. At the district court level, the party attacking the administrative decision below bears the burden of proof on its challenge. *Brian S. v. Vance*, 86 F.Supp.2d 538, 539 (D.Md. 2000); *Jones*, 15 F.Supp.2d at 786; *King*, 999 F.Supp. at 768.

In determining whether a disabled child has been provided with a "Free Appropriate Public Education" ("FAPE"), the lynchpin of the IDEA, there is no requirement that state educators must maximize the potential of the child. *Board of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 189–90, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Nor is there any requirement to guarantee any particular outcome for the child. *Id.* at 192, 102 S.Ct. 3034. All that the IDEA requires is that the child receive some form of specialized education that is sufficient to confer some educational benefit. *Id.* at 195–201, 102 S.Ct. 3034. Similarly, the Fourth Circuit has made it clear that the IDEA does not require that state or local authorities provide a child with the best education, public or private, that money can buy, or that the child's potential be maximized—it is enough if the disabled child benefits educationally from the proposed plan. *See Hessler v. State Bd. of Educ.*, 700 F.2d 134, 139 (4th Cir.1983); *King*, 999 F.Supp. at 767; *see also, Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 980 (4th Cir.1990). Finally, the IDEA does not guarantee that each child will receive an ideal educational opportunity. *Hartmann v. Loudoun County Bd. of Educ.*, 118 F.3d 996, 1004 (4th Cir.1997).

■ Applying the foregoing standards to this case, it is apparent that the decision of the ALJ is entitled to presumptive validity, and is *prima facie* correct. The only procedural error attributed to the ALJ's decision is that he is asserted to have applied the incorrect burden of proof. After reviewing the conflicting authority, Judge Handy concluded that in the proceedings before him, the parents bore the burden of proof. (ALJ Decision, Paper No. 7 at 11.) It is true that there is a conflict in the rulings from this court [5], and others [6], on this issue. However, the question of who has the burden of proof at an administrative hearing in an IDEA case, though interesting, is not outcome determinative in this particular case. The function of the burden of proof is twofold. First, the allocation of the burden of proof impacts on which side has the burden of production of evidence with respect to a particular issue. *See Director, Office of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 272, 282, 284, 114 S.Ct. 2251, 129 L.Ed.2d 221 (1994); *Kohlsaat v. Parkersburg & Marietta Sand Co.*, 266 F. 283, 284–85 (4th Cir.1920); Graham, Handbook of Federal Evidence, § 301.2–301.5, (4th Ed.1996). In this case, the parties agreed that the parents would present their case first. (TR at 6.) Thus, the parents affirmatively agreed to present their proof first, and have identified no prejudice to them by having done so. The second function of the burden of proof is to

---

5. *Compare Schmerling v. Anne Arundel County Bd of Educ.*, No. 98–2283, slip op. at 5 (D.Md. May 18, 1999) (affirming decision of ALJ that placed burden of proof on parents to demonstrate inappropriateness of a proposed IEP), *with Brian S. v. Vance*, 86 F.Supp.2d. 538, 545 (D.Md.2000) (assigning burden of proof at administrative hearing to school authority proposing an IEP).

6. *See, e.g., Fritschle v. Andes*, 45 F.Supp.2d 500, 508 n. 21 (D.Md.1999) (discussing conflict in authority).

identify the party that bears the burden of non-persuasion. *Greenwich Collieries,* 512 U.S. at 283–84, 114 S.Ct. 2251; *Kohlsaat,* 266 F. at 285; Graham, *supra.* Knowing which party bears this burden identifies for the decision maker who must lose if she fails to prove her case by the required standard of proof. *Greenwich Collieries,* 512 U.S. at 272, 114 S.Ct. 2251; *Kohlsaat,* 266 F. at 285. While, in cases such as *Brian S.,* 86 F.Supp.2d at 540, 545, where the evidence is very close, knowing which party bears the burden of proof can be critical[7], this is not so in the present case. Although Judge Handy concluded that Cassie's parents bore the burden of proving that the IEP proposed by MCPS did not provide Cassie with a FAPE, he added "[h]owever, I would note that while the parties placed great emphasis on the issue of burden of proof, in fact my decision would remain unchanged even if I had determined that the MCPS carried the burden." (ALJ's Decision, Paper No. 7 at 11.)

From the ALJ's discussion of the evidence produced from both parties at the administrative hearing, and, as next will be seen, as confirmed by my independent review of the transcript of the hearing and the exhibits received into evidence, it is clear that the evidence was not evenly balanced, and that the evidence supporting the IEP proposed by the MCPS greatly outweighed that produced by Cassie's parents. For this reason, even if the Fourth Circuit were to reach the same conclusion[8] regarding which party has the burden of proof that the district court did in *Brian S.,* the outcome on the merits would not be different. This is because, when the facts of this case are evaluated against the case law regarding what is meant by a FAPE, it is clear that the MCPS did establish, by at least a preponderance of evidence, that the placement recommended for Cassie for school year 1999–2000 would provide her with a FAPE. A remand to the ALJ directing him to reconsider his decision, assigning the burden of proof to the MCPS, would produce the same result, which, as will be seen, is legally correct.

Distilled to its essentials, the position of Cassie's parents is that she should be in a general education ("GE") program so that she has the opportunity to earn a high school diploma. Because they contend that no school in Maryland is appropriate for Cassie's needs, they seek to be reimbursed the cost of her tuition at the Riverview School, located in Cape Cod, Massachusetts. They assert further that the MCPS decision to place Cassie in the Rock Terrace School, where she only can receive fundamental life skills ("FLS") instruction, contradicts the notation placed in the record of the July, 1999 IEP meeting that Cassie's program of studies should include both GE and FLS studies.

Cassie's mother, herself a certified special education teacher, (TR at 29) and Ms. Seawright, the coordinator for the Lab School's junior high school program, (TR at 96) testified that Cassie should be placed in a program directed towards the award of a high school diploma, but conceded that it would be difficult for her to meet this goal. (TR at 48, 87, 113, 384.) Representatives of the Lab School did not think that their diploma track program was appropriate for Cassie, and felt that it would be difficult for her to earn a diploma

---

**7.** In *Brian S.,* 86 F.Supp.2d at 540, the ALJ stressed in his written decision how important it was to his decision which party bore the burden of proof, because the opinions expressed by the experts were at odds, and the experts for both parties were qualified and impressive. The ALJ ultimately concluded that the parents bore the burden, and ruled against them because they had failed to convince him that the IEP proposed by the school would not provide educational benefit. *Id.* at

540–41. The district judge disagreed with the ALJ that the parents bore the burden of proof, and remanded the case because he could not determine how the ALJ's decision might have been different if the burden of proof had been assigned in accordance with the district court's ruling. *Id.* at 545.

**8.** The *Brian S.* case has been appealed.

there. (TR at 87, 100, 113.) Moreover, the Lab School acknowledged that Cassie needed fundamental life skills instruction, so that she could best be prepared for everyday life demands. (TR at 105, 112, 115, 119–120.) This recommendation was supported by the MCPS witnesses that testified at the hearing, and who participated in the July 1999 IEP meeting. (TR at 173, 203, 276, 282, 288, 291.)

Further, Cassie's test scores on the Maryland functional math, reading and writing examinations all were failing (TR at 148–152), suggesting that it would be difficult for her to obtain a high school diploma (TR at 172). And, despite recent progress in reading, she still was significantly below age and grade level for this skill. (TR at 170–172, 227, 308.) This evidence demonstrates that there was a factual basis for the ALJ's conclusion that, despite the failure of the MCPS to recommend a program for Cassie that would provide her with both GE and FLS programs, the placement recommendation made by the IEP team reasonably was suited to her needs, given the level of her past performance. (ALJ Decision, Paper No. 7 at 23.)

Moreover, although both the GE and FLS boxes were checked in the record of the July, 1999 IEP meeting, the evidence before the ALJ was clear that during that meeting there was a lengthy discussion about whether Cassie required a residential placement in a diploma track curriculum. (Parents' Exhibit 5, handwritten notes at 1, 6–8, 11, 14, 17–18, 21–22); (TR at 185–188, 212, 217, 274–275, 285, 292, 293, 305, 323, 326, 366.) The MCPS representatives at the IEP meeting, and who testified at the administrative hearing, were of the strongly held opinion that a residential placement was not appropriate for Cassie, especially at a school with a greater intensity level than the Lab School, because Cassie was not a behavioral problem, or a danger to herself or others. (TR at 185, 187–188, 212, 217, 274–275, 285, 292, 293, 305, 323, 326, 366.)

In short, Cassie's parents place unwarranted importance on the discrepancy between the boxes checked on the July, 1999 IEP report regarding the programs recommended for Cassie and the ultimate recommendation to place her at the Rock Terrace School, where only a FLS program would be available. If this discrepancy was the result of error, or simply inattention by the preparer of the report, it nonetheless did not deprive Cassie of any right protected by the IDEA, as the ALJ found, because, as next will be seen, the record amply demonstrated that the Rock Terrace placement was appropriate for Cassie, as it provided her with a FAPE. To conclude otherwise would exalt form over substance. "In reviewing the administrative record to determine whether there has been compliance with the IDEA, the district court must consider whether any failure to do so has caused a loss of educational opportunity, or is merely technical in nature." *King*, 999 F.Supp. at 766; *Sanger v. Montgomery County Bd. of Educ.*, 916 F.Supp. 518, 526–27 (D.Md. 1996) (citing *Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir.1990)). The checking of both the GE and FLS boxes on the record of the July, 1999 IEP meeting did not cause Cassie the loss of any educational opportunity guaranteed by the IDEA, and, therefore, affords her no basis for the relief requested by her parents.

The MCPS witnesses that appeared at the administrative hearing testified that Rock Terrace would be an appropriate placement for Cassie, and that the goals and objectives of the 1999–2000 IEP, which her parents approved, could be achieved there. They further testified that the programs at Rock Terrace appropriately would address Cassie's needs and disabilities, and that she could be expected to make meaningful progress there. (TR at 205, 211, 297, 345–355, 358–366.)

They also testified that placement of Cassie at Rock Terrace would not preclude her from ever getting a high school diplo-

ma from MCPS, because her IEP would be reviewed annually, and if she made progress and demonstrated the ability to handle GE courses she could get them from other MCPS schools[9]. (TR at 246, 317, 340, 342, 362.)

Finally, Dr. Peikes, Cassie's mother, admitted that if Cassie were to attend Rock Terrace she would do well there, because she liked school and liked to succeed. Dr. Peikes, herself the principal of a special education school, also acknowledged that the program at Rock Terrace was excellent, and that if Cassie attended that school she would do well there. (TR at 383.)

From the evidence introduced at the hearing, the ALJ concluded that the placement proposed for Cassie by the MCPS would afford her with a FAPE. (ALJ Decision, Paper No. 7 at 24.) My independent review of the record confirms that there was an evidentiary basis to support this determination, and that the FLS curriculum at Rock Terrace that was proposed would provide educational benefit to Cassie, *Rowley*, 458 U.S. at 195–201, 102 S.Ct. 3034, which is all that the IDEA mandates. There is no requirement that MCPS place Cassie in a school that will maximize her potential, *Hessler*, 700 F.2d at 139, or provide her with the "ideal" educational opportunity that the witnesses who testified in Cassie's behalf said Riverview would afford her. (TR at 22, 115, 119–120.) *Hartmann*, 118 F.3d at 1004. Judge Handy's decision was based on fact findings made in a regular manner, with evidentiary support and, accordingly, is entitled to presumptive validity, and is *prima facie* correct. *King*, 999 F.Supp. at 766; *Jones*, 15 F.Supp2d at 785.

■ The Parents have not argued that their claim under the Rehabilitation Act is in any way different than their claim under the IDEA. In such circumstances, since

the later has failed, the former must as well. *Jones*, 15 F.Supp.2d at 787 (citations omitted). Furthermore, because no federal claims remain, the section 1983 claims also fail. *Id.*

For the reasons stated, MCPS' motion for summary judgment is GRANTED, and the Parents' is DENIED. A separate order shall issue.

### ORDER

For the reasons stated in the foregoing Memorandum of same date, it is this _____ day of February, 2001 hereby ORDERED:

1. that defendant's Motion for Summary Judgment is GRANTED;

2. that plaintiff's Motion for Summary Judgment is DENIED;

3. that judgment is entered in favor of the defendant;

4. that the Clerk is directed to CLOSE this case; and

5. that the Clerk is directed to mail a copy of this Order and the foregoing Memorandum to counsel of record.

---

9. The Riverview School, which Cassie attended during the 1999–2000 school year, has both diploma track and certificate track programs. However, Dr. Peikes testified at the administrative hearing that Riverview School had not yet determined whether Cassie would be placed in a diploma program, or a certificate program. (TR at 67–68.)