PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JERRY WEAST, Superintendent of
Montgomery County Public
Schools; BOARD OF EDUCATION OF
MONTGOMERY COUNTY,
                    *Plaintiffs-Appellants,*

                    v.

BRIAN SCHAFFER, a minor, by his
parents and next friends, Jocelyn
and Martin Schaffer; JOCELYN
SCHAFFER; MARTIN SCHAFFER,
                    *Defendants-Appellees.*          No. 03-1030

NATIONAL SCHOOL BOARDS
ASSOCIATION; MARYLAND
ASSOCIATION OF BOARDS OF
EDUCATION; NORTH CAROLINA SCHOOL
BOARDS ASSOCIATION; SOUTH
CAROLINA SCHOOL BOARDS
ASSOCIATION; VIRGINIA SCHOOL
BOARDS ASSOCIATION,
 *Amici Curiae Supporting Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-99-15-PJM)

Argued: January 23, 2004

Decided: July 29, 2004

Before WILKINSON, LUTTIG, and MICHAEL, Circuit Judges.

Reversed and remanded by published opinion. Judge Michael wrote the opinion, in which Judge Wilkinson joined. Judge Luttig wrote a separate dissenting opinion.

---

## COUNSEL

**ARGUED:** Zvi Greismann, MONTGOMERY COUNTY PUBLIC SCHOOLS, Rockville, Maryland, for Appellants. Michael Jeffrey Eig, Chevy Chase, Maryland, for Appellees. **ON BRIEF:** Haylie M. Iseman, MICHAEL J. EIG & ASSOCIATES, P.C., Chevy Chase, Maryland, for Appellees. Naomi Gittins, Staff Attorney, NATIONAL SCHOOL BOARDS ASSOCIATION, Alexandria, Virginia; Scott Price, General Counsel, SOUTH CAROLINA SCHOOL BOARDS ASSOCIATION, Columbia, South Carolina; Allison B. Schafer, Director of Policy/Legal Services, NORTH CAROLINA SCHOOL BOARDS ASSOCIATION, Raleigh, North Carolina; Stephen C. Bounds, Director of Legal & Policy Services, MARYLAND ASSO-CIATION OF BOARDS OF EDUCATION, Annapolis, Maryland; Elizabeth Ewing, Director of Legal & Policy Services, VIRGINIA SCHOOL BOARDS ASSOCIATION, Charlottesville, Virginia, for Amici Curiae.

---

## OPINION

MICHAEL, Circuit Judge:

   The Individuals with Disabilities Education Act (IDEA) gives every disabled child the right to a "free appropriate public education" tailored to meet his or her unique needs. 20 U.S.C. § 1400(d)(1)(A). To enforce this right, the IDEA requires every public school system receiving federal funds to develop and implement an Individualized Education Program (IEP) for each disabled child in its jurisdiction. *Id.* § 1412(a)(3)-(4). When the parents believe their disabled child's IEP is inadequate, they may initiate an administrative proceeding (called a due process hearing) to challenge the IEP. *Id.* § 1415(f). The parents of Brian Schaffer initiated a due process hearing to challenge the IEP developed for him by Maryland's Montgomery County Public School

System (MCPS). The issue in this appeal is whether the district court was correct in assigning the burden of proof to the school system in that proceeding. The IDEA is silent on burden of proof. Because we have no valid reason to depart from the general rule that the party initiating a proceeding has the burden of proof, we reverse and remand.

I.

Brian, who has Attention Deficit Hyperactivity Disorder and other learning disabilities, attended Green Acres private school in Montgomery County from pre-kindergarten through seventh grade. Green Acres does not have a special education program, and Brian struggled academically throughout his years in attendance there. Brian was placed on probation when he began the seventh grade in the fall of 1997; in October of that year school personnel told Brian's mother that he needed to attend a school that could more adequately accommodate his disabilities.

Shortly thereafter (in November 1997), Brian's mother contacted the Herbert Hoover Middle School, an MCPS school, and requested that Brian be evaluated to determine his eligibility for special education services for the 1998-1999 school year. In the meantime, Brian's parents applied to have him admitted to another private school, the McLean School of Maryland, for the 1998-1999 academic year. On February 26, 1998, the MCPS committee that determines special education eligibility, the Admission, Review, and Dismissal (ARD) Committee, held its first meeting to discuss Brian's educational needs with his parents, their lawyer, and Herbert Hoover school officials. The following month Brian was admitted to the McLean School for the next academic year, and his parents paid the enrollment fee to reserve his place in the eighth grade class. The ARD Committee held its second meeting in early April 1998, found Brian eligible for special education, and offered an IEP for the next (1998-1999) school year.

The proposed IEP specified that Brian would receive 15.3 hours of special education and 45 minutes of speech therapy each week at his "home" school, Herbert Hoover Middle School. After the parents expressed concern about class size at Herbert Hoover, the MCPS offered to provide the same IEP services at the Robert Frost Middle School, a school ten minutes from Brian's home, where he could

receive more of his instruction in smaller classes. Shortly thereafter, in May 1998, the parents informed MCPS that the proposed IEP was inadequate and that Brian would attend private school at McLean. At the same time, the parents requested a due process hearing pursuant to the IDEA, claiming that the proposed IEP denied Brian a free appropriate education; they sought reimbursement of the tuition and other expenses for Brian's private school attendance. (The IDEA requires the school system to arrange for an impartial due process hearing, and the hearing cannot be conducted by a system employee or an employee of the state educational agency. *See* 20 U.S.C. § 1414(f)(3). In Maryland the due process hearing is conducted by an administrative law judge (ALJ) in the state's Office of Administrative Hearings. Md. Code Ann., Educ. § 8-413(c) (Michie 1997); *A.B. v. Lawson*, 354 F.3d 315, 320 (4th Cir. 2004).)

At the original due process hearing in Brian's case, the ALJ assigned the burden of proof to the parents. The parents challenged the substance of the IEP, not the process by which it was developed, and the ALJ explained that deference is owed to education professionals in the substantive design of an IEP. The parents were therefore required to prove that the IEP was inadequate, specifically, that it was not "reasonably calculated to enable the child to receive educational benefits." *Hendrick Hudson Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982). Both sides submitted extensive expert testimony, and the ALJ considered the case to be close. He commented that the "assignment of the burden of proof [was] critical" to the outcome. J.A. 46. Ultimately, the ALJ concluded that the parents had not met their burden. The ALJ's order upheld the IEP proposed by the MCPS and denied the parents' request for reimbursement for Brian's private school expenses.

Brian's parents sued the MCPS (technically, the Board of Education of Montgomery County and its superintendent) in district court, claiming that the ALJ had erred in assigning the burden of proof to them. The district court, agreeing with the parents, reallocated the burden of proof to the MCPS and remanded the case to the ALJ for further proceedings. *Brian S. v. Vance (Schaffer I)*, 86 F. Supp. 2d 538 (D. Md. 2000). The MCPS appealed the district court's *Schaffer I* order to our court, but before we heard argument the ALJ reconsidered the case pursuant to the district court's remand order. After reas-

signing the burden of proof to the MCPS, the ALJ found that the MCPS had failed to prove the adequacy of the IEP. The ALJ ordered the MCPS to make partial reimbursement to the parents for Brian's tuition and expenses at private school for the 1998-1999 year. The MCPS then filed an action (*Schaffer II*) in district court to challenge the ALJ's reassignment of the burden of proof. In the meantime, the MCPS's appeal from the district court's order in *Schaffer I* was still pending in this court. We disposed of that appeal by vacating the district court's order and "remand[ing] to that court with directions that any issue with respect to the proof scheme in this case be consolidated with the consideration of the merits." *Schaffer v. Vance*, 2 Fed. Appx. 232, 233 (4th Cir. 2001) (unpublished). Accordingly, in *Schaffer II* the district court, after reaffirming that the MCPS had the burden of proof, concluded that the ALJ had decided correctly on reconsideration that the proposed IEP was inadequate. The district court then set aside the ALJ's decision on tuition and expenses, awarding full reimbursement to the parents. *Weast v. Schaffer (Schaffer II)*, 240 F. Supp. 2d 396 (D. Md. 2002). The MCPS now appeals the district court's decision in *Schaffer II*.

## II.

### A.

The IDEA is silent about which side bears the burden of proof in a state administrative proceeding brought by parents to challenge the adequacy of an IEP. When a statute is silent, the burden of proof is normally allocated to the party initiating the proceeding and seeking relief. *See, e.g.*, J. Strong, *McCormick on Evidence* § 337 (5th ed. 1999); *Dalton v. Capital Assoc. Indus. Inc.*, 257 F.3d 409, 416 (4th Cir. 2001); *Newport News Shipbuilding & Dry Dock Co. v. Loxley*, 934 F.2d 511, 516 (4th Cir. 1991). Although "the natural tendency is to place the burden[ ] on the party desiring change" or seeking relief, other factors such as policy considerations, convenience, and fairness may allow for a different allocation of the burden of proof. *McCormick on Evidence* § 337.

Today our circuit must decide how to allocate the burden of proof in one of these IDEA-prescribed, state administrative proceedings initiated by parents to challenge an IEP. Other circuits are split — and

splintered in reasoning — on this question. Three circuits assign the burden to the parents, and four (perhaps five) assign it to the school system. The Sixth Circuit holds to "the traditional burden of proof" and requires the parents challenging an IEP to establish both its procedural and substantive deficiencies. *Cordrey v. Eukert*, 917 F.2d 1460, 1466 (6th Cir. 1990). The Fifth and Tenth Circuits also assign the burden of proof to the parents, but for a different reason. According to these circuits, because the statute relies on the expertise of education professionals in local school systems, their decisions about the substantive terms of an IEP are owed deference; as a result, the parents bear the burden of proving why an IEP is deficient. *Alamo Heights Indep. Sch. Dist. v. State Bd. of Educ.*, 790 F.2d 1153, 1158 (5th Cir. 1986); *Johnson v. Indep. Sch. Dist. No. 4*, 921 F.2d 1022, 1026 (10th Cir. 1990).

On the other side the Third Circuit assigns the burden of proof to school systems when their IEPs are challenged by parents in administrative proceedings. *Carlisle Area Sch. Dist. v. Scott P.*, 62 F.3d 520, 533 (3d Cir. 1995) (citing *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1219 (3d Cir. 1993) (holding that when an administrative decision upholding an IEP is challenged *in district court*, the school district has the burden of proof because of its expertise and access to information and witnesses)). Three other circuits, the Second, Eighth, and Ninth, have announced without explanation that the school system has the burden of proving the adequacy of the IEP at the administrative hearing. *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998); *E.S. v. Independent Sch. Dist. No. 196*, 135 F.3d 566, 569 (8th Cir. 1998); *Clyde K. v. Puyallup Sch. Dist. No. 3*, 35 F.3d 1396, 1398 (9th Cir. 1994). Finally, the D.C. Circuit assigned the burden of proof to a school system when an IEP was challenged as procedurally deficient, noting that "[t]he underlying assumption of the Act is that to the extent its procedural mechanisms are faithfully employed, [disabled] children will be afforded an appropriate education." *McKenzie v. Smith*, 771 F.2d 1527, 1532 (D.C. Cir. 1985). It is not clear how the D.C. Circuit would assign the burden in a case such as this one where only the substance of the IEP is challenged.

Because the decisions assigning the burden of proof at the administrative hearing to the school system offer little or no analysis, they do not persuade us to depart from the normal rule of allocating the bur-

den to the party seeking relief. We will therefore proceed to consider the main arguments advanced by Brian's parents for assigning the burden to the school system.

### B.

The parents argue that because the IDEA is a remedial statute that places the obligation on a school system to provide a free appropriate public education for disabled children, the school system should bear the burden of proving that its IEP meets that obligation. This brings to mind other remedial federal statutes such as Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Age Discrimination in Employment Act. These statutes impose on employers (or others) the obligation not to discriminate against an individual because of characteristics such as race, sex, disability, or age. Like the IDEA, these statutes are silent about burden of proof, yet we assign it to the plaintiff who seeks the statutory protection or benefit; the burden is not assigned to the party with the statutory obligation. *See, e.g.*, *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995). We do not believe, then, that a school system should have the burden of proof in an IEP challenge just because it has the statutory obligation to propose an adequate educational program for the disabled child. A "favored group," in other words, is not relieved of the burden of proof "merely because a statute confers substantive rights on [it]." *Clyde K.*, 35 F.3d at 1399.

### C.

Because school systems have a natural advantage in IEP disputes by reason of their greater expertise and resources, they should have the burden of proof, according to Brian's parents. Specifically, the argument goes, the school system understands the requirements of the IDEA, has greater educational expertise than parents, and has better access to information and witnesses. *See Oberti*, 995 F.2d at 1219. This persuaded the district court in Brian's case to assign the burden at the administrative level to the school system (the MCPS). *See Schaffer II*, 240 F. Supp. 2d at 403-04 (citing *Lascari v. Bd. of Educ.*, 560 A.2d 1180, 1186 (N.J. 1989)).

We do not automatically assign the burden of proof to the side with the bigger guns. And "[v]ery often [a party] must plead and prove

matters as to which his adversary has superior access to the proof."
*McCormick on Evidence* § 337. In IDEA administrative disputes Congress has taken steps, short of allocating the burden of proof to school systems, that level the playing field. As the Supreme Court observed, Congress recognized "that in any [IDEA] disputes the school officials would have a natural advantage," so it therefore "incorporated an elaborate set of what it labeled 'procedural safeguards' to insure the full participation of the parents and proper resolution of substantive disagreements." *School Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985).

These procedural safeguards and other provisions in the IDEA are all designed to inform parents and to involve them in the development of the IEP for their child. The Act involves parents at all stages, making them members of their child's IEP team and enabling them to advocate for their position if a dispute arises. 20 U.S.C. § 1414(d). Parents have the right to examine all records, materials, assessments, and other information the school system uses to develop an IEP, and they have the right to participate fully in meetings relating to the IEP and the evaluation of their child. *Id.* § 1415(b). Parents have the right to request an independent evaluation of their child at school system expense. *Id.*; 34 C.F.R. § 300.502(b)(2)(ii). The school system must give parents written notice of their rights at key intervals: when their child is initially referred for evaluation, when they are notified about each IEP meeting, when their child is reevaluated, and when they register any complaint about the school system's effort to provide a free appropriate public education for their child. 20 U.S.C. § 1415(d)(1). The notice of the parents' rights must be written in "an easily understandable manner." *Id.* § 1415(d)(2). Finally, the statute authorizes "parent training and information centers," which, as the name suggests, are centers designed to "meet the training and information needs of parents of children with disabilities" and to "assist parents to understand the availability of, and how to effectively use" the protections of the IDEA. *Id.* § 1482.

If the parents request an administrative hearing, additional services and protections become available. Voluntary mediation conducted by an impartial mediator, with the school system bearing the costs, must be made available before the case proceeds to hearing. 34 C.F.R. § 300.506. The school system must also advise the parents "of any

free or low-cost legal and other relevant services available in the area." *Id.* § 300.507(a)(3). There are also discovery requirements that give parents advance notice of the evidence they will encounter at a hearing. A party may not introduce evidence that is not disclosed at least five business days before the hearing. *Id.* § 300.509(a)(3). Likewise, at least five business days prior to the hearing, "each party shall disclose to all other parties all evaluations completed by that date and recommendations based on the offering party's evaluations that the party intends to use at the hearing." 20 U.S.C. § 1415(f)(2)(A). Finally, if the parents prevail in their challenge, they may be awarded reasonable legal fees. *Id.* § 1415(i)(3)(B).

The IDEA and its implementing regulations require an open process that makes relevant information and special services, such as the independent evaluation, available to parents. By the time the IEP is finally developed, parents have been provided with substantial information about their child's educational situation and prospects. They have continuing access to information and anticipated evidence once a hearing is requested. In sum, Congress has taken into account the natural advantage a school system might have in the IEP process, including the administrative hearing, by providing the explicit protections we have outlined. As a result, the school system has no unfair information or resource advantage that compels us to reassign the burden of proof to the school system when the parents initiate the proceeding.

D.

Although Brian's parents recognize that the IDEA is silent as to burden of proof, they argue that "[i]nherent in the [Act] is the principle that school systems bear the burden of proof." Appellees' Br. at 17. The parents refer to two cases, *Mills v. Board of Education of Washington, D.C.*, 348 F. Supp. 866 (D.D.C. 1972), and *Pennsylvania Association for Retarded Children v. Commonwealth (PARC)*, 343 F. Supp. 279 (E.D. Pa. 1972), that Congress apparently used as the blueprint for the Education of the Handicapped Act, now the IDEA. *See Rowley*, 458 U.S. at 194 ("The fact that both *PARC* and *Mills* are discussed at length in the Legislative Reports suggests that the principles which they established are the principles which, to a significant extent, guided the drafters of the Act.").

The Supreme Court in *Rowley* pointed out the similarities between *PARC* and *Mills* and what is now the IDEA. *Rowley*, 458 U.S. at 194 n.16. *PARC*, like the Act, "required the State to identify, locate, and evaluate [disabled] children, to create for each child an individual educational program, and to hold a hearing on any change in education assignment." *Id.* at 194 n.16 (internal quotation marks and citations omitted). *Mills*, for its part, provided parents with the various procedural safeguards that appear in the Act, such as their rights to inspect records, to have an independent evaluation of the child, "to object to the IEP and receive a hearing before an independent hearing officer, to be represented by counsel at the hearing, and to have the right to confront and cross-examine adverse witnesses." *Id.* (citation omitted).

*Mills* placed the burden of proof at the administrative hearing on the school system. 348 F. Supp. at 881. In *PARC* after the school system satisfied its burden of production by introducing its placement report, the burden to introduce evidence shifted to the parents. It appears, however, that the ultimate burden of proof rested with the school system. *PARC*, 343 F. Supp. at 305. The parents argue that because the Act specifically incorporated a number of other major principles from *PARC* and *Mills*, "[i]t stands to reason that Congress intended for the IDEA to echo the[ir] assignments of burden of proof." Appellees' Br. at 19. The circumstances compel the opposite conclusion, we believe. Congress took a number of the procedural safeguards from *PARC* and *Mills* and wrote them directly into the Act. Congress thus knows how to borrow ideas and incorporate them into legislation. For the Act here, it borrowed some ideas and specifically ignored others. We cannot conclude from this that Congress intended to adopt the ideas that it failed to write into the text of the statute. For whatever reason Congress did not assign the burden of proof, and Congress has not signaled by its silence that we should depart from the general rule.

## E.

The dissent argues that in light of the affirmative (IDEA-mandated) obligation a school system has to provide an appropriate educational program for each disabled child, "the most reasonable, though by no means irrebuttable presumption, is that the school [system] should

bear the burden of proof in the due process hearings." *Post* at 14. As we have already pointed out, however, the general rule is quite the opposite: a party who initiates a proceeding to obtain relief based on a statutory obligation bears the burden of proof. *McCormick on Evidence* § 337. The general rule is sometimes stated in a slightly different way that is instructive here: the burden of proof is on the party who should lose if no evidence is offered by either side. 9 J. Wigmore, *Wigmore on Evidence* § 2485 (1981). We believe that when parents challenge the adequacy of an IEP, they should lose if no evidence is presented. To say that the school system should lose is to say that every challenged IEP is presumptively inadequate. *See id.* A presumption of inadequacy would go against a basic policy of the IDEA, which is to rely upon the professional expertise of local educators. Congress enacted the IDEA with the clear intention of deferring to local school authorities for the development of educational plans for disabled children. *See Rowley*, 458 U.S. at 207-08; *Hartman v. Loudoun County Bd. of Educ.*, 118 F.3d 996, 1000-01 (4th Cir. 1997). And while Congress "[e]ntrust[s] a [disabled] child's education to state and local agencies" under the IDEA, it "protect[s] individual children by providing for parental involvement [and for certain assistance to parents] . . . in the formulation of [a] child's [IEP]." *Rowley*, 458 U.S. at 208. Under this statutory arrangement, it is reasonable to require parents attacking the terms of an IEP to bear the burden of showing why it is deficient.

The dissent would assign the burden of proof to the school system because of its "distinct, inherent advantage" over parents when it comes to proposing and evaluating educational plans for disabled children. *Post* at 14. Parents, the dissent says, "lack the comprehensive understanding . . . [and] means to assess the likely benefit of available alternatives." *Id.* Again, when Congress designed and passed the IDEA, it was keenly aware that school systems have professional expertise and that parents do not. It was for this very reason that Congress imposed statutory safeguards to assist parents in becoming substantively informed. If Congress considered burden of proof at all, it no doubt recognized that allocating the burden to school systems is not the kind of help parents really need in challenging IEPs. For regardless of which side has the burden of proof in an administrative hearing, parents will have to offer expert testimony to show that the proposed IEP is inadequate. Shifting the burden of

proof, in other words, will not enable parents by themselves to mount a serious, substantive challenge to an IEP. Congress recognized that parents need professional assistance, and the IDEA therefore allows parents who prevail in due process hearings to recover their fees for hiring lawyers. 20 U.S.C. § 1415(i)(3). If experience shows that parents do not have sufficient access to substantive expertise under the current statutory scheme, Congress should be called upon to take further remedial steps. As far as procedure is concerned, however, we have no convincing reason to depart from the traditional burden of proof in IDEA due process hearings.

## III.

In sum, the IDEA does not allocate the burden of proof, and we see no reason to depart from the general rule that a party initiating a proceeding bears that burden. Congress was aware that school systems might have an advantage in administrative proceedings brought by parents to challenge IEPs. To avoid this problem, Congress provided a number of procedural safeguards for parents, but assignment of the burden of proof to school systems was not one of them. Because Congress took care in specifying specific procedural protections necessary to implement the policy goals of the Act, we decline to go further, at least insofar as the burden of proof is concerned. Accordingly, we hold that parents who challenge an IEP have the burden of proof in the administrative hearing. We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

LUTTIG, Circuit Judge, dissenting:

I do not agree with the majority's holding that the burden of proof in due process hearings conducted pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(f)-(g), should be borne by a disabled child's parents, rather than by the school district that is charged with providing that child a "free appropriate public education," 20 U.S.C. § 1412(a)(1)(A). Not only does the school district have the affirmative, statutory obligation under the IDEA to develop a suitable education program (IEP) for every disabled child, the school district is also in a far better position to demonstrate that

it has fulfilled this obligation than the disabled student's parents are in to show that the school district has failed to do so. Accordingly, I would hold that the school district — and not the comparatively uninformed parents of the disabled child — must bear the burden of proving that the disabled child has been provided with the statutorily-required appropriate educational resources.

The majority concludes otherwise based on the "normal rule of allocating the burden to the party seeking relief." *Ante* at 6-7. As even it admits, however, this so-called "rule" is, in actuality, merely a presumption and not a very strong one at that. Relying on *McCormick on Evidence*, the majority explains that, "[a]lthough 'the natural tendency is to place the burden[ ] on the party desiring change' or seeking relief, other factors such as policy considerations, convenience, and fairness may allow for different allocation of the burden of proof." *Ante* at 5 (quoting *McCormick on Evidence* § 337).

Each of these "other factors" — policy, convenience and fairness — weigh against the assignment of the burden of proof to the parents in this case. To begin with, the policies behind the IDEA indisputably argue in favor of placing the burden of proof with the school district. As the Supreme Court has explained,

> [t]he Act represents an ambitious federal effort to promote the education of handicapped children, and was passed in response to Congress' perception that a majority of handicapped children in the United States "were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to 'drop out.'"

*Bd. of Educ. of Hendrick Hudson Central Sch. Dist.* v. *Rowley*, 458 U.S. 176, 179 (1983) (brackets in original). In the service of this effort, the IDEA obligates school districts to provide every disabled child with an educational program that is reasonably responsive to that child's disability. *Id.* at 188-89. The IDEA also requires school districts to involve the parents of the disabled child in the formulation of educational plans made in response to the child's particular disability and to receive and consider the suggestions of parents in the development of those plans. In light of these affirmative obligations, the

most reasonable, though by no means irrebuttable, presumption is that the school district should bear the burden of proof in the due process hearings required by the Act as well.

The majority suggests otherwise by comparing the obligation of school districts under the IDEA to that of defendants in civil rights claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the Age Discrimination Act. *See ante* at 7. Because defendants in civil rights claims have a statutory obligation to refrain from discrimination but do not bear the burden of proof in claims against them, the majority reasons that the school districts' obligation under IDEA should not compel it to bear the burden of proof either. *Ante* at 7. The analogy is not apt. Unlike the civil rights statutes referenced by the majority, the IDEA does not merely seek to *remedy* discrimination against disabled students, it imposes an *affirmative obligation* on the nation's school systems to provide disabled students with an enhanced level of attention and services. *See Rowley*, 458 U.S. at 189 (explaining that "the face of the statute evinces a congressional intent . . . to require the States to adopt *procedures* which would result in individualized consideration of and instruction for each [disabled] child") (emphasis in original). And it is this affirmative obligation (rather than the Act's purpose of remedying discrimination) that weighs most heavily in favor of placing the burden of proof in due process hearings on the school district.

Turning next to the interests of convenience and fairness, it is apparent that the school district possesses a distinct, inherent advantage over the parents of disabled children in assessing the feasibility and the likely benefit of alternative educational arrangements. While individual parents may have insight into the educational development of their own children, they lack the comprehensive understanding of the educational alternatives available to disabled children in the school district that officials of the school system possess. And, even more importantly, the parents lack the means to assess the likely benefit of available alternatives. Parents simply do not have, and cannot easily acquire, the cumulative, institutional knowledge gained by representatives of the school district from their experiences with other, similarly-disabled children.

The majority recites, at length, the services and protections provided to parents under the IDEA, but the mere recitation of these pro-

visions does nothing more than highlight Congress' awareness that parents of disabled children operate at a disadvantage when they seek to contest the individualized educational placement developed by their school district. It certainly does not show that Congress has "leveled the playing field" between the school district and the parents. These procedural protections may invest parents with a basis to understand the characteristics of their child's disability and may even provide some understanding of the relative benefits and drawbacks of the educational plan proposed by the school district. But, even in the rosiest of scenarios, the provision of such remedial protections and services would not begin to impart to the average parent the level of expertise or knowledge that the school district possesses as a matter of course.

The majority may well be correct that the assignment of the burden of proof to the party with the "bigger guns" is not "automatic." However, with only a faint, general presumption in favor of placing the burden of proof on the complainant on the other side of the equation, the fact that the party with the "bigger guns" also has better access to information, greater expertise, and an affirmative obligation to provide the contested services can hardly be ignored. Indeed, in my judgment, the collective weight of each of these considerations is dispositive.

I fear that, in reaching the contrary conclusion, the majority has been unduly influenced by the fact that the parents of the disabled student *in this case* have proven to be knowledgeable about the educational resources available to their son and sophisticated (if yet unsuccessful) in their pursuit of these resources. If so, it is regrettable. These parents are not typical, and any choice regarding the burden of proof should not be made in the belief that they are. For the vast majority of parents whose children require the benefits and protections provided in the IDEA, the specialized language and technical educational analysis with which they must familiarize themselves as a consequence of their child's disability will likely be obscure, if not bewildering. By the same token, most of these parents will find the educational program proposed by the school district resistant to challenge: the school district will have better information about the resources available to it, as well as the benefit of its experience with other disabled children. With the full mix of parents in mind, I believe

that the proper course is to assign the burden of proof in due process hearings to the school district.

   I respectfully dissent.