**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 16-1164**

───────────────

N.P., a minor, by his parents and next friends, S.P. and C.P.; S.P.; C.P.,

            Plaintiffs - Appellees,

      v.

KEVIN M. MAXWELL, (officially as) Superintendent, Prince George's County Public Schools; PRINCE GEORGE'S COUNTY BOARD OF EDUCATION,

            Defendants - Appellants.

------------------------------

COUNCIL OF PARENT ATTORNEYS AND ADVOCATES,

            Amicus Supporting Appellee.

───────────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt. J. Frederick Motz, Senior District Judge.  (8:15-cv-00121-JFM)

───────────────

Argued:  October 24, 2017                    Decided:  December 8, 2017

───────────────

Before NIEMEYER, TRAXLER, and WYNN, Circuit Judges.

───────────────

Vacated and remanded with instructions by unpublished opinion.  Judge Wynn wrote the opinion, in which Judge Niemeyer and Judge Traxler joined.

**ARGUED:** Andrew Wayne Nussbaum, NUSSBAUM LAW, LLC, Clarksville, Maryland, for Appellants.  Michael Eig, MICHAEL J. EIG & ASSOCIATES, P.C., Chevy Chase, Maryland, for Appellees.  **ON BRIEF:** Paula A. Rosenstock, MICHAEL J. EIG & ASSOCIATES, P.C., Chevy Chase, Maryland, for Appellees.  Alice K. Nelson, NELSON LAW GROUP, Tampa, Florida; Selene Almazan-Altobelli, COUNCIL OF PARENT ATTORNEYS AND ADVOCATES, Towson, Maryland, for Amicus Curiae.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

The parents of N.P., a disabled but otherwise gifted middle school student, brought this suit on his behalf. They allege the Prince George's County Public Schools deprived N.P. of the "free appropriate public education" to which he is entitled under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* After a three-day hearing, an Administrative Law Judge ruled in favor of the school system. N.P.'s parents then sought review by a district court, which vacated the administrative findings and ordered the school system to reimburse N.P.'s parents for the cost of placing N.P. in a private school. The Prince George's County Public Schools timely appealed. For the reasons outlined below, we vacate the district court's decision and remand for further proceedings.

I.

This case is about the education of N.P., a thirteen-year-old boy who is considered twice-exceptional—that is, he is gifted intellectually, while simultaneously struggling with learning disabilities. The disabilities N.P. faces include Dyslexia, Central Auditory Processing Disorder, and Attention Deficit Hyperactivity Disorder - Not Otherwise Specified. N.P. and his parents first became aware of these disabilities after N.P. underwent testing in the fall of 2012. Subsequently, the Prince George's County Public Schools ("the school system") determined N.P. was entitled to special education services and convened an "Individualized Education Program" team meeting to discuss N.P.'s needs. The team agreed that the school would provide N.P. with three, thirty-minute

3

sessions per week of specialized instruction in reading, writing, and math. The school put this plan in place for the rest of the 2012–13 school year, N.P.'s third grade year.

During the following summer, N.P.'s parents enrolled him in a program at a private school for children with learning disabilities. According to the parents, N.P. thrived at the private school but then quickly became depressed upon returning to his public school in the fall of 2013 for fourth grade. N.P.'s mother met with her son's teachers to raise her concerns. By the next month, the school system reconvened N.P.'s Individualized Education Program team and agreed to additional testing to further assess N.P.'s abilities. In the intervening time, however, during the 2013–14 school year, N.P. had access to a paraprofessional in the classroom for extra assistance as needed.

After more testing throughout that school year, N.P. was accepted into the Prince George's County Schools' Talented and Gifted Program for the 2014–15 school year. This admission figured significantly in the school system's plans for N.P. during the 2014–15 school year. Once identified as gifted, N.P. was eligible to receive all instruction in a classroom with only students in that program. Even in that setting, however, N.P. would continue to receive the accommodations described in his Individualized Education Program. Based upon the updated plan created in May and June of 2014, N.P. would receive significant services during the upcoming year. An instructional assistant would be present in the classroom, as before. N.P. also would receive two, daily forty-five-minute sessions with a special education instructor—one each for math and writing. Additionally, he would have four, thirty-minute sessions per week for extra science and social studies instruction.

Rather than enrolling N.P. at his public school for the 2014–15 school year, however, his parents enrolled him at the private school he attended during the summer of 2013. The parents also requested a due process hearing in which they claimed the school system denied N.P. a free appropriate public education for the 2014–15 school year. They thus sought reimbursement for the tuition paid to the private school for that year. An Administrative Law Judge ("ALJ") conducted a hearing over three days. The parents presented testimony from experts, employees of N.P.'s new private school, and N.P.'s mother. The school system elicited testimony from eight witnesses, including its own experts, several of N.P.'s former teachers, and the assistant principal at the public school N.P. had attended.

The ALJ found in favor of the school system, and N.P.'s parents subsequently appealed to the district court. The district court did not conduct any further evidentiary hearings but instead reversed the ALJ based on the record from the administrative proceedings. The school system timely appealed to this Court. The case was placed in abeyance pending the Supreme Court's decision in *Endrew F. ex rel. Joseph F. v. Douglas County School District RE-1*, 137 S. Ct. 988 (2017). After the Supreme Court released its opinion, the parties submitted supplemental briefing, and the case was re-calendared for oral argument.

II.

The purpose of the Individuals with Disabilities Education Act is to "ensure[] that children with disabilities receive needed special education services." *Fry v. Napoleon*

5

*Cmty. Sch.*, 137 S. Ct. 743, 748 (2017). Thus, when states accept federal funding under the IDEA, they agree to provide a "free appropriate public education" ("FAPE") to all children with qualifying disabilities. *See id.*; 20 U.S.C. § 1401(9). "As defined in the Act, a FAPE comprises special education and related services—both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction." *Fry*, 137 S. Ct. at 748–49 (internal quotation marks omitted).

As school systems endeavor to provide the required services, they create an "individualized education program" ("IEP") for each child that sets out a plan to ensure the child gets the assistance he or she needs. 20 U.S.C. § 1414(d). The child's "IEP Team"—a mix of school officials and teachers, along with the student's parents—develops the plan. *Id.* § 1414(d)(1)(B). The IEP Team meets periodically to assess progress and determine what steps are necessary to ensure the student "advance[s] appropriately toward . . . goals." *See id.* § 1414(d)(1)(A)(i)(IV)(aa).

When parents are unsatisfied with the education provided to their children, they can file a complaint with the local or state educational agency, in accordance with state law. *See* 20 U.S.C. § 1415(b)(6). If the disagreement continues after a "[p]reliminary meeting" among the parties, then the matter proceeds to an "impartial due process hearing." 20 U.S.C. § 1415(f). At such proceedings, the parents bear the burden of proving their child was denied a free appropriate public education. *Weast v. Schaffer ex rel. Schaffer*, 377 F.3d 449, 456 (4th Cir. 2004), *aff'd*, 546 U.S. 49 (2005). If the administrative hearing officer determines the child was denied this right, the officer is

6

empowered to order the school system to reimburse the child's caregiver for the costs of placing the child in a private school. *See Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985); *M.S. ex rel. Simchick v. Fairfax Cty. Sch. Bd.*, 553 F.3d 315, 324–25 (4th Cir. 2009). Those unsatisfied with the state agency outcome may seek judicial review by filing a civil action in federal court. *See* 20 U.S.C. § 1415(i)(2).

When a district court reviews an education agency's opinion, it must give "'due weight' to the underlying administrative proceedings." *M.M. ex rel. D.M. v. Sch. Dist. of Greenville Cty.*, 303 F.3d 523, 530–31 (4th Cir. 2002) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)); *accord M.L. ex rel. Leiman v. Smith*, 867 F.3d. 487, 493 (4th Cir. 2017). "Whether a district court has accorded the proper 'due weight' to the administrative proceedings is a question of law—or at least a mixed question of law and fact—to be reviewed de novo by an appellate court." *M.M. ex rel. D.M.*, 303 F.3d at 531.[*]

---

[*] This Court has not always been precise—in two separate ways—in how we articulate the standard of review in IDEA cases. First, we have not always clearly distinguished between the standards of review for whether the district court gave the administrative findings "due weight" and for the district court's ultimate conclusion. *Compare M.M. ex rel. D.M.*, 303 F.3d at 531 ("Whether a district court has accorded the proper 'due weight' to the administrative proceedings is a question of law . . . to be reviewed de novo. . . ."), *with Cty. Sch. Bd. of Henrico Cty. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 309 (4th Cir. 2005) ("Whether an IEP is appropriate and thus sufficient to discharge a school board's obligations under the IDEA is a question of fact . . . reviewed under a clear error standard." (internal citations omitted)). Second, we have not always clearly stated that when a district court hears additional evidence, those findings are reviewed for clear error. *See M.M. ex rel. D.M.*, 303 F.3d at 531 ("[W]here a district court has heard and considered additional evidence, . . . we review its findings of fact for clear error."). This occasional imprecision has led to a degree of confusion in the case law. *See O.S. v. Fairfax Cty. Sch. Bd.*, 804 F.3d 354, 360 n.2 (4th Cir. 2015) (noting "tension" in the case (Continued)

7

Giving "due weight" means that "findings of fact made in administrative proceedings are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why." *M.M. ex rel. D.M.*, 303 F.3d at 531; *accord M.L. ex rel. Leiman*, 867 F.3d at 493; *Doyle v. Arlington Cty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991). If the administrative findings of fact are not "regularly made," however, they are not entitled to deference. *Cty. Sch. Bd. of Henrico Cty. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 305 (4th Cir. 2005); *accord Sumter Cty. Sch. Dist. 17 v. Heffernan ex rel. T.H.*, 642 F.3d 478, 485 (4th Cir. 2011); *J.P. ex rel. Peterson v. Cty. Sch. Bd. of Hanover Cty.*, 516 F.3d 254, 259 (4th Cir. 2008). "Factual findings are not 'regularly made' if they are reached through a process that is 'far from the accepted norm of a fact-finding process.'" *Cty. Sch. Bd. of Henrico Cty.*, 399 F.3d at 305 (quoting *Doyle*, 953 F.2d at 104); *accord Sumter Cty. Sch. Dist. 17*, 642 F.3d at 485; *J.P. ex rel. Peterson*, 516 F.3d at 259.

The ALJ used appropriate fact-finding procedures here. She heard testimony over three days and considered over 80 documentary exhibits. Although administrative findings are not entitled to deference if standard procedures are ignored, no one argues that is the case here. Rather, the key question for us is whether the district court gave the ALJ's findings "due weight." *M.M. ex rel. D.M.*, 303 F.3d at 531.

---

law); *Cty. Sch. Bd. of Henrico Cty.*, 399 F.3d at 309 n.7 (same). We believe our case law is consistent if the standards are parsed out in this way, but we need not resolve any potential discrepancy today, because the result is the same for this case under any of the articulated standards.

The ALJ issued a thoroughly reasoned, nearly sixty-page opinion that carefully assessed the key issues in the case. For example, the parties submitted a wealth of standardized testing data. The parents contended the results showed N.P. made no progress at his public school, thus indicating he was denied a free appropriate public education. Arguing to the contrary, the school believed the tests showed progress. In her opinion, the ALJ went through the tests in great detail. As part of that discussion, the ALJ cited teachers' explanations as to why certain tests indicated progress, notwithstanding that the raw scores might suggest otherwise. The ALJ's close analysis of the teachers' explanations was warranted because it is a longstanding policy in IDEA cases to "afford great deference to the judgment of education professionals." *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 517 (4th Cir. 2014); *see also M.M. ex rel. D.M.*, 303 F.3d at 532 ("We have always been, and we should continue to be, reluctant to second-guess professional educators.").

The ALJ also made thoughtful credibility determinations. The ALJ found the testimony of the school system's experts credible because their conclusions were corroborated by the in-classroom experiences described by N.P.'s teachers. Emphasizing that the opinions rendered by the parents' experts were almost entirely based on generalized knowledge or information conveyed by the parents, rather than on personal interaction with N.P., the ALJ also reasonably found that the parents' experts did not undermine the consistent representations of the school system's witnesses. Additionally, the ALJ reasonably called into question the parents' credibility by citing evidence suggesting they were not going through the process in good faith—that is, they had

9

already decided they were going to enroll N.P. in a private school months before the school system had a chance to finish tweaking N.P.'s Individualized Education Program for the 2014–15 school year (the year at issue in the case). Based on these reasons, along with others articulated in the opinion, the ALJ determined N.P. was not denied a free appropriate public education and was thus not entitled to attend private school at the school system's expense.

After N.P.'s parents appealed to the district court, the district court provided a slightly more than three-page opinion setting forth six reasons why it disagreed with the ALJ. Those six reasons provide scant detail and insight into the district court's thought process and are not supported by a single case citation. Most importantly, the district court did not explain its complete deviation from the ALJ's factual findings. For instance, the third reason cited by the district court was one standardized test given in January 2014. The district court's entire discussion of this reason was as follows: the test showed "N.P. was below average in functioning and processing speed. This fact was deemed immaterial by [the school system] because N.P.'s comprehension of what he read was within the average range. Comprehension is different from understanding with reasonable speed." J.A. 63. As discussed earlier, however, the ALJ thoroughly weighed the results of the various standardized tests, and in so doing, decided to credit the teachers' judgment about which tests provided the best indicia of progress. The district court could have disagreed with this finding, but if it did, it needed to explain why. *See M.M. ex rel. D.M.*, 303 F.3d at 531. As the opinion stands, the district court provided no substantive reasons why it discounted the ALJ's findings regarding the standardized test

10

results, especially given that the ALJ's conclusions were based on the opinions of professional educators. This same error—reversing the ALJ's factual findings without giving adequate explanations as to why—occurs throughout the district court's opinion.

The other major shortcoming of the district court's opinion is related: the district court consistently rejected the ALJ's credibility determinations without describing what led it to do so. For example, in its fourth and fifth reasons, the district court criticized the way the ALJ discounted the testimony of the parents and their experts. The most thorough explanation provided by the district court for this criticism was that "there is no evidence that the parents did not participate [in the IDEA process] in good faith." J.A. 63 n.1. To the contrary, the ALJ made a credibility determination on precisely that point. She found the parents not credible, in part due to evidence that, in the ALJ's view, indicated the parents were not participating in good faith. Thus, the district court completely ignored the ALJ's rationale for discrediting the parents' testimony. Instead, the district court did precisely what we have warned against: "substitut[ing] its own credibility assessments for those of the ALJ" without "providing the required explanations." *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 327 (4th Cir. 2004).

None of the above should call into question the authority of a district court to disagree with an ALJ's findings. Congress included judicial review in the statute for a purpose. Yet if a district court is going to disagree with regularly made factual findings, then it must "explain how it, despite the fact that it was reviewing a cold record, reached a conclusion completely contrary to that of the ALJ, who conducted the proceedings." *Id.* In so doing, the district court "should address each such relevant factual finding made

11

by the hearing officer and explain why, under the due weight standard, it has chosen to accept or not accept that finding." *Doyle*, 953 F.2d at 106. The district court in this case did not meet that standard.

Having determined the district court's opinion did not give due weight to the administrative findings, we next must decide the appropriate remedy. When reversing a district court in similar cases, we have sometimes remanded for further proceedings and other times decided the case ourselves based upon the record. *See Cty. Sch. Bd. of Henrico Cty.*, 399 F.3d at 310 (collecting cases that take each approach). In this case, remand is prudent because, during the pendency of this appeal, the Supreme Court clarified the standard for assessing whether a disabled pupil received a free appropriate public education.

As discussed earlier, this case was originally placed in abeyance until the Supreme Court released its opinion in *Endrew F. ex rel. Joseph F. v. Douglas County School District RE-1*, 137 S. Ct. 988 (2017). Prior to *Endrew*, the seminal case regarding a free appropriate public education was *Board of Education v. Rowley*, 458 U.S. 176 (1982). In that case, the Court said a free appropriate public education must "be sufficient to confer some educational benefit." *Id.* at 200. Some courts of appeal had subsequently interpreted that standard to mean "the educational benefit mandated by [the] IDEA must merely be more than *de minimis*." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 798 F.3d 1329, 1338 (10th Cir. 2015) (internal quotation marks omitted), *rev'd*, *Endrew*, 137 S. Ct. 988. In *Endrew*, the Supreme Court invalidated that interpretation. Rather, the Court articulated a new standard: "To meet its substantive obligation under

12

the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew*, 137 S. Ct. at 999.

We need not fully explore the impact of *Endrew* in this case, however. Both the ALJ and the district court wrote their opinions prior to *Endrew*. In fact, the ALJ quotes the "more than *de minimis*" standard in her opinion. The ALJ—the only person to see the witnesses testify in person—should have the opportunity to decide in the first instance whether the outcome of the case is different under the standard articulated by the Supreme Court in *Endrew*. We therefore remand to the district court so it can order further proceedings consistent with this opinion.

## III.

For the foregoing reasons, the judgment of the district court is

*VACATED AND REMANDED WITH INSTRUCTIONS.*