**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-1686**

_____

A.B., a minor, by his parents and next friends, L.K. and J.B.; L.K.; J.B.,

       Plaintiffs - Appellants,

     v.

JACK R. SMITH, officially as Superintendent; MONTGOMERY COUNTY BOARD OF EDUCATION,

       Defendants - Appellees.

_____

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Lydia Kay Griggsby, District Judge.  (8:21-cv-00781-LKG)

_____

Submitted:  April 19, 2023                           Decided:  May 18, 2023

_____

Before AGEE and WYNN, Circuit Judges, and FLOYD, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:** Michael J. Eig, Meghan M. Probert, Paula A. Rosenstock, MICHAEL J. EIG & ASSOCIATES, PC, Chevy Chase, Maryland, for Appellants. Manisha S. Kavadi CARNEY, KELEHAN, BRESLER, BENNETT & SCHERR, LLP, Columbia, Maryland; Emily B. Rachlin, MONTGOMERY COUNTY PUBLIC SCHOOLS, Rockville, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482 (IDEA), follows A.B.'s receiving adverse decisions at both the state-administrative and district-court levels. On appeal, A.B., through his parents and next friends ("the parents"), challenges the Administrative Law Judge's (ALJ) consideration of certain evidence and the district court's denial of his motion to supplement the record. We affirm.

I.

The purpose of the IDEA is to "ensure[] that children with disabilities receive needed special education services." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 157 (2017). Thus, when states accept federal funding under the IDEA, they agree to provide a free appropriate public education ("FAPE") to all children with qualifying disabilities. *See id.* at 158; 20 U.S.C. § 1401(9) (defining FAPE). "As defined in the Act, a FAPE comprises special education and related services—both instruction tailored to meet a child's unique needs and sufficient supportive services to permit the child to benefit from that instruction." *Fry*, 580 U.S. at 158 (internal quotation marks omitted). "To meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).

When parents are dissatisfied with the education provided to their children, they can file a complaint with the local or state educational agency, in accordance with state law. *See* 20 U.S.C. § 1415(b)(6). If the disagreement continues after a "[p]reliminary meeting"

2

among the parties, then the matter proceeds to an "impartial due process hearing." 20 U.S.C. § 1415(f). At such proceedings, the parents bear the burden of proving their child was denied a FAPE. *Weast v. Schaffer ex rel. Schaffer*, 377 F.3d 449, 456 (4th Cir. 2004). Those unsatisfied with the state agency outcome may seek judicial review by filing a civil action in federal court. *See* 20 U.S.C. § 1415(i)(2).

When a district court reviews an education agency's opinion, it must give "'due weight' to the underlying administrative proceedings." *M.M. ex rel. D.M. v. Sch. Dist. of Greenville Cty.*, 303 F.3d 523, 530–31 (4th Cir. 2002) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). "Whether a district court has accorded the proper 'due weight' to the administrative proceedings is a question of law—or at least a mixed question of law and fact—to be reviewed de novo by an appellate court." *Id.* at 531. Giving "due weight" means that "findings of fact made in administrative proceedings are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why." *Id.* If the administrative findings of fact are not "regularly made," however, they are not entitled to deference. *Cty. Sch. Bd. of Henrico Cty. v. Z.P. ex rel. R.P.*, 399 F.3d 298, 305 (4th Cir. 2005). "Factual findings are not 'regularly made' if they are reached through a process that is 'far from the accepted norm of a fact-finding process.'" *Id.* at 305.

A.B. has been diagnosed with Attention Deficit Hyperactivity Disorder, an Expressive Language Disorder, a Social Communication Disorder, and a Specific Learning Disability with impairment in written/dysgraphia. The parents challenged the educational programming recommendations made by Montgomery County Public Schools ("MCPS") for the 2019-2020 and 2020-2021 school years. The parents alleged that MCPS denied

3

A.B. a FAPE, and as a remedy, they sought reimbursement for their unilateral placement of the student at The Lab School ("Lab"), a private school, for the 2019-2020 and 2020-2021 school years.

## II.

A.B. challenged his IEPS for the 2019-2020 and 2020-2021 school years. The parents first argue that the ALJ and the district court ignored evidence of A.B.'s difficulties in the MCPS system prior to the challenged years. As such, they assert that the ALJ incorrectly determined that that A.B. was making educational progress prior to the development of the 2019-2020 IEP, thereby erroneously affecting the ALJ's determination that the 2019-2020 IEP was appropriate. The parents point to MCPS staff concerns in the areas of organization, participation, and social/emotional communication. In addition, A.B. received no A's during his last year in MCPS and earned several D's during the year, although not as a final grade. Further, the parents point to test scores that they argue are inconsistent with the conclusion that A.B. was responding well to MCPS' intervention. Further, the parents contend that the ALJ and the district court failed to consider A.B.'s progress at Lab during the 2019-2020 and 2020-2021 school years.

At the hearing, the ALJ permitted some latitude to discuss A.B.'s prior history in order to provide context for the IEPs at issue in the case but noted that the 2018-2019 IEP was not the subject of the hearing. Nonetheless, in his decision, the ALJ concluded that, in the 2018-2019 school year, A.B. made "sufficient progress" in his goal areas. A.B.'s teachers assessed him as generally meeting his IEP goals and cited his understanding of oral instructions and class participation as areas of strength. Areas of concern included

4

keeping up with lengthy readings, sentence fluency, developing written ideas, focus, rushing through assignments, and impulse control. A.B.'s final grades for the 2018-2019 school year (which included two "advanced" classes) were all B's and C's. The ALJ also considered the parents' consultant's (Richard Weinfeld) observations that A.B. nonetheless faced challenges with reading, writing, and peer interaction. The ALJ noted that A.B. had been assessed using various psychoeducational tools and discussed the results. Further, the ALJ explicitly considered A.B.'s grades at Lab (A's, B's, and C's; no advanced classes) and the results of Lab's more recent assessments.

The district court found that the ALJ considered A.B.'s performance, progress, and behavior during the 2018-2019 school year in determining that the 2019-2020 IEP was appropriate. In addition, the district court recognized that the ALJ evaluated the Lab's assessments and found that they were utilized to develop the 2020-2021 IEP. Thus, the record reveals that, in fact, both the ALJ and the district court appropriately considered A.B.'s progress in the MCPS system and his performance at Lab.

The parents are essentially arguing that A.B. made *better* progress at Lab than at MCPS and that the ALJ failed to consider this. However, such a determination, even if true, is irrelevant. An IEP need only be "reasonable," not "ideal." *Endrew F.,* 580 U.S. at 399. When a child is fully integrated into the regular classroom, appropriate progress is "passing marks and advance[ment] from grade to grade." *Id.* at 401. If this is not a reasonable prospect, the IEP need not "aim for grade-level advancement," but must "be appropriately ambitious." *Id.* at 402.

5

A.B. was integrated into the regular classroom for most classes, and he made grades that exceeded mere passing marks and advancement from grade to grade. Thus, the record showed that A.B. was progressing satisfactorily, and accordingly, MCPS appropriately relied on this progress in developing A.B.'s future IEPs. Even assuming that A.B. made even larger strides at Lab, such a conclusion does not support a finding that his prior progress was insufficient or unreasonable or, more relevantly, that his disputed IEPs were not designed to ensure appropriate progress. Accordingly, this claim is without merit.

### III.

Next, the parents argue that the ALJ erred in giving more weight to MCPS's witnesses, even though they had not observed or worked personally with A.B. In contrast, the parents assert that their witnesses were given less weight, even though they had all personally worked with A.B. In addition, the parents assert that MCPS had a history of failing to assess A.B. and his needs, thereby further undermining their credibility.

There is a longstanding policy in IDEA cases to "afford great deference to the judgment of education professionals." *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 517 (4th Cir. 2014); *see also M.M. ex rel. D.M.*, 303 F.3d at 532 ("We have always been, and we should continue to be, reluctant to second-guess professional educators."). Further, the district court is warned against "substitut[ing] its own credibility assessments for those of the ALJ" without "providing the required explanations." *A.B. ex rel. D.B. v. Lawson*, 354 F.3d 315, 327 (4th Cir. 2004). Specifically, "credibility-based findings [of the ALJ] deserve deference unless non-testimonial, extrinsic evidence in the record would justify a contrary conclusion or unless the record read in its entirety would

6

compel a contrary conclusion." *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 889 (9th Cir. 2001).

The record does not compel the conclusion that the ALJ erred. Here, the ALJ made thoughtful credibility determinations. The ALJ found MCPS witness Sarah Jackson's testimony be worthy of great weight given her lack of bias, her knowledge (although not first-hand) of A.B., and the fact that her testimony was detailed, meticulous, and supported by independent data. Further, the ALJ also found the parents' witness Weinfeld to be worthy of "significant weight" and noted that Weinfeld also believed, in 2019, that the MCPS' Gifted and Talented Learning Disability ("GTLD") program outlined in the IEPs at issue was appropriate to meet A.B.'s needs. However, the ALJ found that, although Weinfeld changed his mind and determined that A.B. required a separate day school, the evidence did not support Weinfeld's conclusion. Specifically, the ALJ pointed to the fact that all of A.B.'s deficits were addressed in the IEP for 2019-2020. The ALJ explicitly discussed the credibility and corroboration of the testimony of Jackson, Weinfeld, and various other witnesses at length.

The parents point to no extrinsic, non-testimonial evidence that undermines the testimony of Jackson and the other MCPS witnesses. The parents rely instead on the lack of firsthand knowledge of A.B. by the MCPS witnesses, the alleged failures of MCPS to assess A.B., and the ALJ's failure to address each and every witness. However, while the ALJ might have chosen to rely on the witnesses' first-hand knowledge of A.B. or MCPS's lack of assessments to apply lesser weight to the MCPS witnesses' testimony, MCPS provides no support for the conclusion that the ALJ was *required* to do so. Moreover, the

parents do not show that the factors considered by the ALJ in making his credibility determinations were inappropriate. Given the deference due to the district court and the ALJ, A.B.'s arguments do not compel a different credibility finding.

IV.

After the parents filed their complaint in district court alleging violations of the IDEA, they filed a motion pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii) to supplement the administrative record. The IDEA provides that the district court "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii). The determination of whether to allow additional evidence "must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial *de novo*." *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 791 (1st Cir. 1984). Rejecting a "lenient" standard, we have held that "additional" evidence will not include "testimony from all who did, or could have, testified before the administrative hearing." *Springer v. Fairfax Cnty. Sch. Bd.*, 134 F.3d 659, 667 (4th Cir. 1998). In *Springer*, we emphasized that to permit plaintiffs to make a tactical decision in delaying relevant evidence that was available at the due process hearing would recharacterize the role of the federal court as an appellate court from the due process hearing and encourage litigants to reserve and bring new evidence to the district court review level. *Id*.

The parents sought to add the following exhibits: (1) A.B.'s school records from California; (2) release of information forms, authorizing MCPS to speak with A.B.'s therapists; (3) a writing sample from A.B. regarding his early childhood trauma; (4) emails between the parents and MCPS staff regarding occupational therapy and various

difficulties A.B. was having; (5) various academic achievement measures; (6) course descriptions showing that A.B. was not taking advanced classes (i.e. the only English class offered to seventh graders was called "Advanced English"), and (7) email from Weinfeld detailing conversations with MCPS regarding his belief that Lab was the appropriate placement. The parents argue that, although this evidence was available at the time of the administrative hearing, they did not anticipate any disputes over their contents. For example, the ALJ relied on testimony that MCPS witnesses were not made aware of the full range of A.B.'s limitations and circumstances from the beginning, allegedly surprising the parents as they believed it was undisputed that they had been open and complete with MCPS throughout the process.

While the parents argue that the new evidence fills gaps in the administrative record and shows errors by the ALJ, their assertion that they could not have anticipated the need for this evidence sooner is not persuasive. The parents bore the burden of proof, and evidence on many of these issues was admitted. The parents' decision not to seek admission of the disputed evidence in the administrative hearing ran the risk that certain issues would be decided against them or that misunderstandings would arise. However, the facts that disputed issues were decided contrary to their positions and that the ALJ relied on evidence they did not expect is not a basis for a second bite at the apple. *See E.R. by E.R. v. Spring Branch Ind. Sch. Dist.,* 909 F.3d 754, 764 (5th Cir. 2018) (noting that rendering a decision on the basis of the administrative record is "the norm").

A.B. had an eight-day hearing and the assistance of counsel. The ALJ issued a lengthy and detailed opinion based on the vast record. A.B. does not assert that there were

9

procedural inadequacies in the administrative proceedings preventing him from making his case or presenting the instant evidence. While A.B. claims that the additional evidence was relevant to certain factual findings by the ALJ, A.B. fails to show how the district court's ruling was an abuse of discretion. *See United States v. Malone*, 57 F.4th 167, 172 (4th Cir. 2023) (noting that a district court abuses its discretion when it acts arbitrarily or irrationally, relies on erroneous factual or legal premises, or commits an error of law). As such, this claim fails.

Accordingly, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*